**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Kristina J. Holm**, OSB No. 112607
KJHolm@perkinscoie.com
**Misha Isaak**, OSB No. 086430
MIsaak@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Jennifer Middleton**, OSB No. 071510
JMiddleton@jjlslaw.com
JOHNSON JOHNSON & SCHALLER PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Telephone: 541.683.2506
Facsimile:  541.484.0882

Cooperating attorneys on behalf of the
ACLU Foundation of Oregon, Inc.

Attorneys for Plaintiffs

**Kevin Díaz**, OSB No. 970480
KDiaz@aclu-or.org
ACLU FOUNDATION OF OREGON, INC.
P.O. Box 40585
Portland, OR 97240
Telephone:  503.227.6928
Facsimile:  503.227.6948

**Rose Saxe**, *pro hac vice*
RSaxe@aclu.org
**Amanda Goad**, *pro hac vice*
AGoad@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212.549.2627
Facsimile: 212.549.2650

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| PAUL RUMMELL and BENJAMIN WEST; LISA CHICKADONZ and CHRISTINE TANNER; BASIC RIGHTS EDUCATION FUND, *Plaintiffs*, v. JOHN KITZHABER, in his official capacity as Governor of Oregon; ELLEN ROSENBLUM, in her official capacity as Attorney General of Oregon; JENNIFER WOODWARD, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority, and RANDY WALRUFF, in his official capacity as Multnomah County Assessor, *Defendants*. | No. 6:13-cv-02256-TC<br><br>**AMENDED COMPLAINT**<br><br>FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>Pursuant to 42 U.S.C. § 1983 |

1-    AMENDED COMPLAINT

LEGAL29023055.1

## I.  INTRODUCTION

1.  Plaintiffs Paul Rummell and Benjamin West, and Lisa Chickadonz and Christine Tanner are two loving, committed same-sex couples.  Plaintiff Basic Rights Education Fund is a not-for-profit organization that works to advance the rights of lesbian, gay, bisexual, and transgender Oregonians through education and advocacy.  Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief for the violation of Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution caused by the exclusion of same-sex couples from the freedom to marry under the laws of the state of Oregon.

2.  Marriage plays a unique role in society as the universally recognized and celebrated hallmark of a couple's commitment to build family life together.  It confers upon couples a dignity and status of immense import.  Plaintiffs have formed committed, enduring bonds equally worthy of the respect afforded by the state of Oregon to different-sex couples through marriage.  Since 2008, Oregon has allowed same-sex couples to enter into domestic partnerships, which offer only some of the legal protections of marriage, and provide none of the dignity of that status.  Yet, Plaintiffs and other committed same-sex couples in Oregon are barred from marrying as a result of existing Oregon statutes and because the Oregon Constitution was amended in 2004 to single out lesbian and gay Oregonians by excluding them from the freedom to marry, based solely on their sexual orientation and their sex.

3.  On October 16, 2013, the Deputy Attorney General for the state of Oregon issued a legal opinion that the State could begin to respect the marriages of same-sex couples who married in other states, because refusing to do so would likely be unconstitutional after the Supreme Court's decision in *United States v. Windsor*.  The next day, the Chief Operating Officer for the Oregon Department of Administrative Services, Michael Jordan, directed all state agencies immediately to recognize all marriages performed outside of Oregon, including marriages of same-sex couples.  Nevertheless, the State continues to refuse to allow same-sex

2-   AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

LEGAL29023055.1

couples to marry in Oregon.  Further, Mr. Jordan's directive binds only state agencies, not other entities like courts and local governments.

4.      The exclusion from marriage inflicts serious and irreparable harms upon same-sex couples and their children.  For example, Plaintiffs Paul and Ben are unmarried, and wish to marry for the same reasons as different-sex couples — to publicly declare their love and commitment before their family, friends, and community, and to give one another and their child L.B. the security and protections that only marriage provides.

5.      Plaintiff Basic Rights Education Fund ("Basic Rights") is a statewide civil rights organization that has a long history of public education and advocacy for the rights of lesbian, gay, bisexual, and transgender individuals.  These efforts include opposition to restrictions on marriage for same-sex couples.  Basic Rights opposed amending the Oregon Constitution to exclude same-sex couples from marriage, and it is active in ongoing efforts to repeal that provision.

6.      Our courts and our society have discarded, one by one, marriage laws that violated the Constitution's mandate of equality, such as anti-miscegenation laws and laws that denied married women legal independence and the right to make decisions for themselves. History has taught us that the vitality of marriage does not depend on maintaining such discriminatory laws.  To the contrary, eliminating these unconstitutional restrictions has enhanced the institution.  Ending the exclusion of lesbian and gay couples from marriage is no different.  Indeed, as of today, in 17 states and the District of Columbia, same-sex couples are marrying and the institution of marriage continues to thrive.[1]

7.      Plaintiffs seek equal access to marriage as the only means to secure their rights to due process and equal protection of the law, and to eliminate the myriad serious harms inflicted

---

[1] This number excludes Utah and Oklahoma, where courts have struck down marriage bans, but those decisions are stayed pending appeal.  Prior to entry of the stay, same-sex couples were permitted to marry in Utah.

3-   AMENDED COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

on them by the marriage ban and Defendants' enforcement of it.  Accordingly, Plaintiffs bring this suit pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief on the grounds that the State's exclusion of same-sex couples from marriage through the Oregon Constitution and Oregon statutes violates the due process and equal protection guarantees of the Fourteenth Amendment to the United States Constitution.

## II.    PARTIES

### A.    Plaintiffs

8.    Paul Rummell ("Paul") and Benjamin West ("Ben") are a gay couple residing in Portland, Oregon.  Paul, age 43, is a veteran of the United States Air Force, in the past worked in the theatre arts, and for the last nine years has been working in the renewable energy field.  Ben, age 35, worked for twelve years in the financial services industry and is currently in a program he expects to complete in 2015 to become a registered nurse.  Paul and Ben were born and raised in Oregon and had religious upbringings.

9.    Paul and Ben met during Gay Pride in 2006.  Paul does not usually attend Pride but decided to go with some friends because of the unseasonably good weather.  As soon as Ben walked into a pub after a Pride block party, Paul was struck by his presence.  They started up a conversation and Paul was touched by the fact that Ben had spent time earlier in the day with his father because it was Father's Day.  Their first date, the following evening, ended with a single kiss after walking around Portland for hours.  They began seeing each other regularly and after three months they decided to live together.

10.    Paul and Ben have combined their finances.  Even though they live as one household, they were denied a low-interest veteran's loan because they needed to include Ben's income to qualify.  However, they were unable to include his income because they were not married.  They ultimately did purchase a house, but not at the more favorable veteran's interest rate.  Fortunately, Paul's employer provides domestic partner insurance benefits, but Paul and

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Ben are concerned about what might happen to their medical coverage if Paul has to change jobs sometime in the future.

11.    In 2010, Paul and Ben knew they wanted to be committed to one another.  Even though they could not marry under Oregon law, or their respective faiths, they decided to hold a wedding-like ceremony to declare their love and commitment to each other.  The ceremony took place on August 21, 2010, with family and friends present.  Paul and Ben asked Portland's then-Mayor Sam Adams to officiate to make the proceedings feel more legitimate.  Although Paul's parents attended, Ben's declined.  Paul was raised to believe in the sanctity of marriage and he very much wants to have a civil marriage because of what it represents.

12.    Early in their relationship Paul and Ben were candid about their desire to be fathers.  They ultimately decided they wanted to become foster parents to focus on helping children who had been dealt a particularly difficult hand in life.  Paul and Ben completed all of the training, home studies, and background checks necessary to begin caring for children in their home.  In the course of about a year-and-a-half, they had long-term placements of three children and provided respite care for almost ten additional children.

13.    In June of 2012, L.B., a six-year old boy with serious behavioral issues, was placed with Paul and Ben.  L.B.'s history made the likelihood of finding a long-term placement for him very low.  Paul and Ben worked extensively and exclusively with L.B. and in the process developed a deep parental love for him.  They decided to adopt L.B. and are now waiting for the last step of the adoption to be finalized.

14.    Paul and Ben want to make sure that L.B. grows up in a safe and stable home without the repeated message from society that their family is less worthy of dignity and respect than anyone else's family.  They are concerned about L.B. being teased or bullied by his classmates because Paul and Ben are a same-sex couple and L.B.'s peers may not understand their relationship.  When they travel, they are concerned about whether or not their relationship, and especially their relationship to L.B., would be recognized by other people or government

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

officials.  They very much want to be legally married in Oregon, not just so that others recognize the love and commitment of their relationship, but so that they will have the important legal protections for each other and their new family.

15.    Lisa Chickadonz ("Lisa") and Christine Tanner ("Chris") are a lesbian couple residing in Portland, Oregon.  Lisa, age 56, is a nurse and midwife and also is an assistant professor of nursing.  Chris, age 66, is currently semi-retired and has had a long career in nursing that included work in clinical, research, teaching, and administrative capacities.  Both Lisa and Chris have lived in Oregon for over 30 years.

16.    Lisa and Chris met in 1982 and began dating in 1985.  In September 1986, they had a private commitment ceremony and exchanged rings.  Shortly thereafter, they decided to create and raise a family together.  Lisa is the birth mother for their two children.  Katie was born in 1991 and Jacob was born in 1994.  The couple spent thousands of dollars in attorney fees, home studies, and related expenses to perform second parent adoptions for each child so that Chris would be a legal parent to both children.  The couple did what they could to come as close as possible to creating the same legal rights and responsibilities of married couples with respect to the two children.

17.    In addition to having raised their children together, the couple shares everything.  They jointly own all of their major assets and have planned for retirement and the possibility of medical emergencies with the help of attorneys.  Again, they have tried to approximate the same legal rights and responsibilities between each other that married couples enjoy in Oregon.  Doing so has cost them thousands of dollars they otherwise would not have had to spend if they could marry in Oregon.  These costs are ongoing and most recently involved issues about the couple's respective wills and health care directives.

18.    When the news broke that Multnomah County would begin to issue marriage licenses to same-sex couples on March 3, 2004, Lisa and Chris did not hesitate.  They had wanted to be legally married for years and headed down to the county building the night before.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Chris, with a broken leg and a lawn chair, stayed out all night to be first in line.  The following morning Lisa brought their children so they could all be together as a family.  While waiting in line, the children were subjected to derogatory comments about homosexuality from opponents of marriage for same-sex couples.  Undaunted, and with marriage certificate in hand, Lisa and Chris were married the afternoon of March 3, 2004, by a minister in their church.

19.     Lisa and Chris were surprised at how meaningful it was to them, and to their community, that they were legally married.  Their love and commitment was acknowledged, respected, and celebrated by their fellow church members with whom they shared years of involvement.  Upon their arrival home from the wedding ceremony, their neighbors joined in the celebration.  And both Lisa and Chris experienced a significant difference in how their extended family interacted with them.

20.     Family members now understood what their relationship meant to each other and what a central part of their life it represented.  When introducing each other as a spouse there was no question of the level of commitment that relationship entailed.  Importantly, the state of Oregon also recognized their love and commitment by granting the same rights and responsibilities to the couple as any other married couple.  After almost 20 years of not being able to marry, Lisa and Chris memorialized the recognition of their relationship by hanging their framed marriage license in their home.

21.     Lisa and Chris were devastated after their marriage was invalidated by the Oregon Supreme Court and the passage of Measure 36, which amended the Oregon Constitution to prohibit state recognition of marriages for same-sex couples.  They felt awful that, under the laws of Oregon, their marriage didn't exist.  Their love and commitment was no longer recognized by the State they called home.  If someone now asked them if they were married, they would have to say they were not.  Their marriage license now serves as a painful reminder of the fact that they are not married, so they took it down.

7-   AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

22.     After the Oregon Legislature passed a domestic partnership law in 2007, Lisa and Chris considered whether or not they should register.  They knew what it was to be married and recognized that registering was not the same.  Lisa and Chris decided to wait until they could get married again; they wanted the real thing.

23.     Lisa and Chris have been together for almost 30 years.  They have raised a family and plan to spend the rest of their lives together.  They want to get legally married in Oregon, amongst friends and family, in their church, and by their minister.

24.     Plaintiff Basic Rights Education Fund ("Basic Rights") is a not-for-profit organization formed under the laws of Oregon.  Basic Rights is a statewide civil rights organization dedicated to education about and advocacy for equal rights for lesbian, gay, bisexual, and transgender Oregonians.  Basic Rights' mission statement provides that it "will ensure that all lesbian, gay, bisexual and transgender Oregonians experience equality by building a broad and inclusive politically powerful movement, shifting public opinion, and achieving policy victories."

25.     Basic Rights has been deeply involved in advocating for the freedom to marry for same-sex couples in Oregon.  In 2004, before the Oregon Constitution was amended to prohibit state recognition of marriage for same-sex couples, Basic Rights worked with the Multnomah County Board of Commissioners and its legal counsel to assess the constitutionality of Oregon's marriage statute.  The County's counsel and the State's legislative counsel both concluded that Oregon's marriage statute was unconstitutional and the County began to issue marriage licenses to same-sex couples.  When the State Registrar refused to register the licenses, Basic Rights' affiliate entity Basic Rights Oregon ("BRO"), along with the American Civil Liberties Union and nine same-sex couples, filed a declaratory judgment action seeking a declaration that exclusion of same-sex couples from marriage violates Article I, section 20, of the Oregon Constitution. Later that year, Basic Rights and BRO helped to organize the campaign in opposition to Measure 36 — the ballot initiative that amended the Oregon Constitution to prohibit state recognition of

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

marriages for same-sex couples.  After narrowly losing that campaign, Basic Rights was an organizing force behind a lawsuit that challenged the validity of Measure 36 under the Oregon Constitution (although Basic Rights was not a named party in the suit).  Basic Rights continues to work to repeal or overturn Measure 36.

26.    The exclusion of same-sex couples from marriage injures both Basic Rights' constituents and Basic Rights itself.  For instance:

a.    The exclusion of same-sex couples from marriage promotes an impression that gay men, lesbians, and bisexuals are less than equal members of the civic community, entitled to diminished respect and inferior rights.  This exclusion disproportionately impacts people of color, who are more likely to be raising children and living in poverty, further isolating communities already experiencing the impacts of systemic racism, homophobia, and transphobia.  This creates additional work for Basic Rights inasmuch as Basic Rights must organize in the community to promote the equal dignity of gay men, lesbians, and bisexuals, and resist the message of inequality conveyed by the State's marriage laws.

b.    As a result of the exclusion of same-sex couples from marriage, Basic Rights had to innovate and advocate for an alternative, inferior mechanism to ensure rights of same-sex couples: the Oregon Family Fairness Act, ORS 106.300.  Raising awareness about and promoting the passage of this legislation required a significant expenditure of resources by Basic Rights.

c.    The Oregon Family Fairness Act creates significant confusion about the status and rights of same-sex couples.  Basic Rights must expend resources educating the public, including same-sex couples, about what domestic partnerships are and what rights they do and do not provide.  For instance, Basic Rights created a Domestic Partnership Resource Guide to educate people about the unfamiliar institution.  In addition, Basic Rights participated with the Oregon Bureau of

9-   AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Labor and Industries to convene various state agencies to re-write forms and state websites. Basic Rights also regularly fields inquiries about Oregon domestic partnerships and assists same-sex couples who have been subject to unequal treatment in violation of the Oregon Family Fairness Act. These efforts require the expenditure of significant resources by Basic Rights.

d.    The exclusion of same-sex couples from marriage also imposes significant and unique burdens on transgender people who are in or wish to enter permanent relationships, many of whom confront uncertainty about the legal status of their marriages. Due to the complexity and cost of changing gender markers on legal identification documents, transgender Oregonians seeking relationship recognition are rarely able to do so with certainty, leaving their relationships vulnerable. Basic Rights expends resources advising transgender people on their relationship rights.

e.    The right of same-sex couples to marry in Oregon is of such fundamental importance to lesbian, gay, bisexual, and transgender Oregonians that it requires the majority of the organizational capacity and resources available to Basic Rights for public education and advocacy. This limits the organization's ability to engage in other critical work. For instance, Basic Rights worked to advance the Oregon Safe Schools Act of 2009 to create a safe environment for all students in Oregon. This has been an organizational priority, especially in light of incidents of gay and transgender youth being bullied and committing suicide. Nonetheless, nearly five years after the law's passage, more than one-third of Oregon school districts are still not in compliance with the law. If same-sex couples had the freedom to marry in Oregon, Basic Rights could devote significantly more resources to addressing this and other important issues.

10-  AMENDED COMPLAINT

B.      **Defendants**

27.      Defendant John Kitzhaber is sued in his official capacity as Governor of the state of Oregon. He is vested with the chief executive power of the State, and has the duty to see that the State's laws, including the marriage ban, are faithfully executed. Or. Const. art. V, §§ 1, 10. Governor Kitzhaber and his subordinates also bear the authority and responsibility for the formulation and administration of the policies of the executive branch, including administrative agency policies relating to health insurance coverage, vital records, tax obligations, state employee benefits programs, and regulation of health professions — all of which involve recognizing marital status. ORS 180.060(10). Governor Kitzhaber appoints the heads of various agencies with responsibility for recognizing the marriages of same-sex couples and may remove those appointees for various reasons, including for how they administer laws relating to the ability of same-sex couples to marry, or to have their valid marriages from other jurisdictions recognized. Governor Kitzhaber also has authority to remove from office members of boards, commissions, councils and collegial bodies for misconduct, including a failure to comply with the obligations of the federal Constitution. Governor Kitzhaber is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint.

28.      Defendant Ellen Rosenblum is sued in her official capacity as the Attorney General for the state of Oregon. As the chief legal officer of the state of Oregon, her duties include enforcement of the State's laws, including the marriage exclusion. ORS 180.060, 180.210. She also has "[f]ull charge and control of all the legal business of all departments, commissions and bureaus of the [S]tate," including advising such departments, commissions, and bureaus of their obligations under the U.S. Constitution. ORS 180.220(1)(b). She also has the power to enforce obligations created by the U.S. Constitution through her ability to initiate suit to protect the interests of the State's citizens. ORS 180.220, 180.240. Ms. Rosenblum is a

11-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

LEGAL29023055.1

person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint.

29.    Defendant Jennifer Woodward is sued in her official capacity as the State Registrar, Center of Health Statistics, Oregon Health Authority ("State Registrar").  Ms. Woodward's duties include directing and supervising the Center for Health Statistics and its system of vital records; directing, supervising, and controlling the activities of all persons pertaining to the operation of the system of vital records.  ORS 432.030.  She is responsible for furnishing forms for the marriage license, marriage certificate, and application for marriage license used in the State.  ORS 432.405(2).  All marriages performed in the State must be filed with the State Registrar and she is responsible for registering marriage records that have been filed.  ORS 432.405(1).  Ms. Woodward must ensure compliance through all of these functions with relevant state laws, including those that currently exclude same-sex couples from marriage. Ms. Woodward is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint.

30.    Defendant Randy Walruff is sued in his official capacity as the County Assessor for Multnomah County.  Mr. Walruff's duties include issuing marriage licenses; levying and collecting a fee on each marriage license; solemnizing marriages; maintaining records relating to marriages licensed in the county; and forwarding a record of each marriage to the State Registrar. Mr. Walruff must comply with state law in performing his duties, including those laws that exclude same-sex couples from marriage.  Mr. Walruff is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint.

31.    Defendants, through their respective duties and obligations, are responsible for enforcing the State's marriage ban.  Each Defendant, and those subject to their direction, supervision, and control, intentionally performed, participated in, aided and/or abetted in some manner the acts alleged here, proximately caused the harm alleged herein, and will continue to injure Plaintiffs irreparably if not enjoined.  Accordingly, the relief requested herein is sought

12-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

LEGAL29023055.1

against each Defendant, as well as all persons under their supervision, direction, or control, including but not limited to their officers, employees, and agents.

## III.   JURISDICTION AND VENUE

32.   Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution.

33.   This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

34.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Kitzhaber maintains official offices in Marion County, Oregon, and all Defendants reside within the state of Oregon; and because a substantial part of the events that gave rise to the Plaintiffs' claims took place within this District and Division.

35.   This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

36.   This Court has personal jurisdiction over Defendants because they are domiciled in the State.

## IV.   STATEMENT OF FACTS

**A.   Plaintiff-couples' Eligibility to Marry**

37.   Plaintiff-couples are residents of Oregon who experience the same joys and challenges of family life as their heterosexual neighbors, co-workers, and other community members who freely may marry.  Plaintiffs are productive, contributing citizens who support their families and nurture their children, but must do so without the same legal shelter, dignity, and respect afforded by the State to other families through access to the universally celebrated status of marriage.  The State's exclusion of Plaintiffs from marriage, and Defendants' enforcement of that exclusion, subjects Plaintiffs to an inferior "second class" status relative to

13-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

LEGAL29023055.1

the rest of the political community and deprives them and their children of equal dignity, security, and legal protections afforded to other Oregon families.

38.    But for the fact that they are of the same sex, both of the Plaintiff-couples — Paul and Ben, and Lisa and Chris — are legally qualified to marry under the laws of the Oregon, and wish to marry in this State.  Each is over the age of 17, fully competent, and is not precluded from marriage as a result of having another spouse or being closely related to the other.  They are willing to provide the requisite information to receive a marriage license and to pay the required fee.   They are able and eager to assume the responsibilities of marriage.

**B.    The Oregon Marriage Ban**

39.    In 2004, following a ballot initiative campaign, voters approved Measure 36, an amendment to the Oregon Constitution  providing: "It is the policy of Oregon, and its political subdivisions, that only a marriage between one man and one woman shall be valid or legally recognized as marriage."  Or. Const. art. 15 § 5a.

40.    Measure 36 passed narrowly.  Proponents of Measure 36 secured its passage by leveraging public fear of and animus against gay men and lesbians.  For instance, proponents submitted the following statements for publication in the statewide Voters' Pamphlet regarding Measure 36:

> a.    "If we normalize homosexual marriage, the state will be forced to place foster children in same-sex households. Schools, and society, will be teaching the next generation the 'equality' of same-sex marriage, changing our views of the importance of gender and the nature of family.  It will cause kids to question their sexual identity, and increase experimentation with a behavior that is neither emotionally nor physically healthy."

> b.    "To radically and fundamentally change the definition of marriage to include what God considers an 'abomination' is to reject God's purpose in marriage for men, women, children, and a nation. … Providing equivalent legal standing to unnatural relationships will force devastating and irreversible changes to our society."

14-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

LEGAL29023055.1

c.   "Vote YES on [Measure] 36, Because It's the Way Nature Meant it to Be.  A Marriage between a man and woman is more than just about a loving relationship, it's also about the laws of nature."

d.   "MYTH: Homosexuals suffer serious harm because they're denied the protections of marriage. / REALITY: Many of the 'protections' granted by marriage are already available to same-sex couples through the use of private contractual arrangements …."

e.   "[Same-sex marriage] is a vast, untested social experiment on children. … It is never wise or compassionate to intentionally subject children to social experimentation."

f.   "If … the Oregon Constitution requires two individuals of the same sex be [sic] able to marry simply because they want to, it is difficult to argue larger groups of individuals of any sex (polygamy or 'polyamory') should not also be able to join in group marriage."

g.   "Defining marriage as between one female and one male does not violate anyone's civil rights. … For example, no one can marry their [sic] sister, brother, mother or father. A parent cannot marry his or her children.  And it's not considered discrimination to forbid marrying a child or having two spouses."

41.   Also, a recurring claim in Voters' Pamphlet statements was that scientific studies had proven same-sex relationships to be unhealthy and bad for children being raised by same-sex parents.  This and similar claims were and are untrue.

42.   The Oregon marriage statute provides that "[m]arriage is a civil contract entered into in person by males at least 17 years of age and females at least 17 years of age."  ORS 106.010.  Numerous other Oregon statutes refer to a husband and wife.  For instance, ORS 106.150(1) requires the parties to a marriage to declare that "they take each other to be husband and wife."  Similarly, under ORS 106.041(1), the authorization accompanying a properly-issued marriage license requires the official conducting the marriage ceremony "to join together as husband and wife the persons named in the license."

43.   In 2008, the Oregon legislature passed the Oregon Family Fairness Act, which provides same-sex couples with some of the legal protections and obligations of marriage by

15-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

LEGAL29023055.1

creating a parallel institution of domestic partnerships.  ORS 106.300.  The Family Fairness Act

clearly states that a domestic partnership is not a marriage.  ORS 106.305(7).  In fact, the

legislative findings of the statute explicitly "recognize[] that numerous distinctions will exist

between these two legally recognized relationships.  The Legislative Assembly recognizes that

the legal recognition of domestic partnerships under the laws of this state may not be effective

beyond the borders of this state and cannot impact restrictions contained in federal law."  *Id.*

44.    On June 26, 2013, in *United States v. Windsor*, 133 S. Ct. 2675 (2013), the U.S.

Supreme Court struck down the federal "Defense of Marriage Act," which had prevented the

federal government from respecting the valid marriages of same-sex couples.

45.    On October 17, 2013, the Deputy Attorney General issued an opinion letter to the

Chief Operating Office of the Oregon Department of Administrative Services.  That letter states

that because Oregon generally respects out-of-state marriages, the State may respect the

marriages of same-sex couples who marry in other states.

46.    In the opinion letter, the Deputy Attorney General recognized that Measure 36

likely barred recognition of out-of-state marriages of same-sex couples, but concluded that the

denial of such respect would be unconstitutional under the United States Constitution.

Specifically, the opinion letter noted that, "we cannot identify any legitimate (much less

compelling) state interest in requiring that each marriage recognized in Oregon contain one

partner of each sex; no benefit to Oregon results from that limitation, and no injury would result

from recognizing the marriages."  The letter continues:  "[s]ame-sex relationships are given legal

recognition in Oregon, in the form of domestic partner registration.  To defend a refusal to

acknowledge marriages, the state would have to articulate a state interest in allowing

partnerships but refusing to recognize marriages — and again, we cannot point to any such

interest that would pass constitutional muster even at the lowest possible level of scrutiny,

rational basis review."

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**C.    The State's Exclusion of Same-Sex Couples from Marriage Inflicts Profound Harm on Plaintiffs**

47.    Barring same-sex couples from marriage disqualifies them from critically important rights and responsibilities that different-sex couples rely upon to secure their commitment to each other, and to safeguard their families.  By way of example only, same-sex couples are denied:

a.    The ability to solemnize their relationships through state-sanctioned marriage ceremonies.  The denial of state sanction or recognition deprives same-sex couples of important legal protections that automatically come with state-sanctioned marriage.

b.    The ability to safeguard family resources under an array of laws that protect spousal finances, including for example, the exemption from federal taxable income of the value of health insurance coverage that one partner receives through the other's employment, and the exemption or deferral of federal taxes on the property of certain elderly or disabled residents.

c.    A host of federal rights and responsibilities that span the entire United States Code and the whole realm of federal regulations.  Unmarried couples are denied recognition for virtually all purposes throughout the more than 1,000 statutes and numerous federal regulations relating to marriage, including laws pertaining to Social Security, housing, taxes, criminal sanctions, copyright, and veterans' benefits.  Many of these deprivations drain family economic resources, causing financial harm not only to same-sex couples but to their children as well.

48.    Although the Chief Operating Officer for the Oregon Department of Administrative Services, Michael Jordan, has directed state agencies to recognize all marriages performed outside Oregon, this directive binds only state agencies, not other entities like courts and local governments.  Thus, married same-sex couples in Oregon are denied rights and

17-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

responsibilities of marriage, to the extent enjoyment of such rights and responsibilities is contingent on entities not bound by Mr. Jordan's directive, whether government or private.  By way of example only, same-sex couples may be denied:

    a.    The ability to make caretaking decisions in times of death and disaster, including priority to make medical decisions for an incapacitated spouse, the ability to petition a circuit court for an autopsy; the automatic right to authorize interment, and the automatic right and priority to make anatomical gifts of a decedent's body.

    b.    The ability to support each other in end-of-life circumstances, such as being assured privacy for visits with a spouse if an individual is in a nursing home, and the right to share a room with a spouse if both reside in the same nursing home.

    c.    The right to inheritance under the laws of intestacy, to claim an elective share in a deceased spouse's estate; rights in the family residence pending final determination of the estate; and other survivor benefits, including for example, survivor benefits for a spouse and children of an individual killed while performing firefighting duties.

    d.    In the event that a couple separates, access to an orderly dissolution process for terminating the relationship and assuring an equitable division of the couple's assets and debts.

49.    While same-sex couples are eligible to enter into domestic partnerships under Oregon law, those domestic partnerships are not identical to marriage, and do not offer the full protections of marriage.  For example:

    a.    Couples who have entered into domestic partnerships under Oregon law will be ineligible for virtually all the federal protections otherwise available to validly married couples.

18-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

b.      Couples who enter into domestic partnerships in Oregon who travel to other states may not have those relationships respected, to the extent those states do not recognize domestic partnerships or statuses apart from marriage.

50.     In addition to the tangible harms listed above, Plaintiffs are denied the unique social recognition that marriage conveys.  Without access to the familiar language and legal label of marriage, Plaintiffs are unable instantly or adequately to communicate to others the depth and permanence of their commitment, or to obtain respect for that commitment as others do simply by invoking their married status.

51.     The substantive and dignitary inequities imposed on committed same-sex couples include particular harms to same-sex couples' children, who are equally deserving of the stability, permanence, and legitimacy that are enjoyed by children of different-sex couples who marry.  Civil marriage affords official sanctuary to the family unit, offering parents and children critical means to secure legal parent-child bonds, and a familiar, public way of demonstrating those bonds to third parties.  By denying same-sex couples marriage, the State reinforces the view that the family bonds that tie same-sex parents and their children are less consequential, enduring, and meaningful than those of different-sex parents and their children.  Same-sex couples and their children accordingly must live with the ever-present possibility that others may question their familial relationship — in social, legal, educational, and medical settings and in moments of crisis — in a way that spouses can avoid by simple reference to being married.

52.     Children from a young age understand that marriage signifies an enduring family unit, and likewise understand when the State has deemed a class of families as less worthy than other families, undeserving of marriage, and not entitled to the same societal recognition and support as other families.  The State has no adequate interest to justify marking the children of same-sex couples, including the children of Plaintiffs, with a badge of inferiority that will invite disrespect in school, on the playground, and in every other sphere of their lives.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

53.    The government is a powerful teacher of discrimination to others.  By decreeing that the relationships of same-sex couples are not worthy of the protections of marriage and enforcing that policy, the State and Defendants instruct all persons with whom same-sex couples interact, including those couples' own children, that their relationships are less worthy than others.  Bearing the imprimatur of the government, the State's statutory and constitutional marriage ban, and Defendants' enforcement of it, communicates a view that same-sex couples are unfit for the dignity, respect, and stature afforded to different-sex couples, and this encourages others to follow the government's example in discriminating against them.

54.    Many private entities defer to the State's conferral of marital status in defining "family" for purposes of an array of important benefits, often resulting in the exclusion of same-sex couples and their children from important safety nets such as private employer-provided health insurance for family members.  The State and Defendants also encourage disrespect of committed same-sex couples and their children by others in workplaces, schools, businesses, and other major arenas of life, in ways that would be less likely to occur and more readily corrected if marriage were available to same-sex couples.

**D.    The State's Exclusion of Same-Sex Couples from Marriage is Not Even Rationally Related to a Legitimate Governmental Purpose, Let Alone Substantially Related to an Important Government Purpose or Narrowly Tailored to a Compelling Governmental Purpose**

55.    No legitimate, let alone important or compelling, interest exists to exclude same-sex couples from the historic and highly venerated institution of marriage.  An individual's capacity to establish a loving and enduring relationship does not depend upon that individual's sexual orientation or sex in relation to his or her committed life partner, nor is there even a legitimate interest in justifying same-sex couples' exclusion from marriage and the spousal protections it provides on such bases.

56.    The Deputy Attorney General already has recognized that denying respect to the marriages of same-sex couples does not benefit heterosexual couples.  Different-sex spouses will

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

continue to enjoy the same rights and status conferred by marriage regardless of whether same-sex couples may marry in Oregon, unimpaired by the acknowledgment that this freedom belongs equally to lesbians and gay men.

57.    Because the State already grants same-sex couples many but not all of the legal protections associated with marriage through domestic partnership registration, and now respects the out-of-state marriages of same-sex couples, denying same-sex couples the ability to secure a marriage license within the state of Oregon advances no possible government interest.

## CLAIMS FOR RELIEF

### V.    FIRST CLAIM FOR RELIEF
**Deprivation of Due Process**
**U.S. Const. Amend. XIV**

58.    Plaintiffs incorporate by reference and reallege all of the paragraphs of this complaint as though fully set forth herein.

59.    Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

60.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

61.    Oregon Constitution Article 15, section 5A, ORS 106.010, and all other sources of state law that preclude marriage for same-sex couples violate the due process guarantee of the Fourteenth Amendment.

62.    The right to marry the unique person of one's choice and to direct the course of one's life in this intimate realm without undue government restriction is one of the fundamental liberty interests protected by the Due Process Clause of the Fourteenth Amendment. Defendants' actions to enforce the marriage ban directly and impermissibly infringe this right for all lesbian and gay Oregonians, including Plaintiffs, interfering with a core, life-altering, and intimate personal choice.

21-  AMENDED COMPLAINT

63.     The Due Process Clause also protects choices central to personal dignity and autonomy, including each individual's rights to family integrity and association.  Defendants' actions to enforce the marriage ban directly and impermissibly infringe upon the deeply intimate, personal, and private decisions of lesbian and gay Oregonians regarding family life, and preclude them from obtaining full liberty, dignity, and security for themselves, their families, and their children.

64.     As the State's chief executive officer, Defendant Kitzhaber's duties and actions to enforce the State's marriage ban, including those taken pursuant to his responsibility for the policies of the executive branch relating to, for example, health insurance coverage, vital records, tax obligations, state employee benefits programs, and regulation of motor vehicles and health professions, violate the fundamental right to marry of lesbian and gay Oregonians, including Plaintiffs, as well as their constitutional rights to liberty, dignity, autonomy, family integrity, association, and due process under the Fourteenth Amendment to the United States Constitution.

65.     As the Attorney General, Defendant Rosenblum's duties and actions to ensure compliance with state law, including the marriage ban, violate the fundamental right to marry of lesbian and gay Oregonians, including Plaintiffs, as well as their constitutional rights to liberty, dignity, autonomy, family integrity, association, and due process under the Fourteenth Amendment to the United States Constitution.

66.     As the State Registrar, Defendant Woodward's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, furnishing forms for marriage licenses that prohibit same-sex couples from marrying by requiring a "Bride" and a "Groom," and refusing to register marriage licenses of same-sex couples, violate the fundamental right to marry of lesbian and gay Oregonians, including Plaintiffs, as well as their constitutional rights to liberty, dignity, autonomy, family integrity, association, and due process under the Fourteenth Amendment to the United States Constitution.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

67.     As the County Assessor for Multnomah County, Defendant Walruff's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, denying same-sex couples marriage licenses, violate the fundamental right to marry of lesbian and gay Oregonians, including Plaintiffs, as well as rights, protected under the Fourteenth Amendment to the United States Constitution, to liberty, dignity, autonomy, family integrity, association, and due process of Paul and Ben, and Lisa and Chris.

68.     Defendants' actions thus deny and abridge Plaintiffs' fundamental right to marry, and liberty and due process interests in autonomy, and family integrity and association, by penalizing Plaintiffs' self-determination in the most intimate sphere of their lives.

69.     Defendants cannot satisfy the Due Process Clause's decree that governmental interference with a fundamental right or liberty interest may be sustained only upon a showing that the burden is narrowly tailored to serve a compelling or even important governmental interest, as the marriage ban is not even tailored to any legitimate interest at all.

## VI.    SECOND CLAIM FOR RELIEF
### Deprivation of Equal Protection
### U.S. Const. Amend. XIV

70.     Plaintiffs incorporate by reference and reallege all of the paragraphs of this complaint as though fully set forth herein.

71.     Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

72.     The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

73.     Oregon Constitution Article 15, section 5A, ORS 106.010, and all other sources of state law that preclude marriage for same-sex couples or prevent recognition of their marriages violate the equal protection guarantee of the Fourteenth Amendment both facially and as applied to Plaintiffs. Moreover, by enshrining discrimination in the form of a constitutional

23-  AMENDED COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

amendment, Oregon Constitution Article 15, section 5A, deprives lesbian and gay Oregonians of equal protection of the laws by locking them out of the political process and making it uniquely more difficult to secure legislation on their behalf. The conduct of Defendants in enforcing these laws violates the right of lesbian and gay Oregonians, including Plaintiffs, to equal protection by discriminating impermissibly on the basis of sexual orientation and sex.

74.    As the State's chief executive officer, Defendant Kitzhaber's duties and actions to enforce Measure 36, including those taken pursuant to his responsibility for the policies of the executive branch relating to, for example, health insurance coverage, vital records, tax obligations, state employee benefits programs, and regulation of motor vehicles and health professions, violate Plaintiffs' constitutional rights to equal treatment, without regard to sexual orientation or sex, under the Fourteenth Amendment to the United States Constitution.

75.    As the Attorney General, Defendant Rosenblum's duties and actions to ensure compliance with state law, including the marriage ban, violate the constitutional rights of all lesbian and gay Oregonians, including Plaintiffs, to equal treatment.

76.    As the State Registrar, Defendant Woodward's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, furnishing forms for marriage licenses that prohibit same-sex couples from marrying by requiring a "Bride" and a "Groom," and refusing to register marriage licenses of same-sex couples, violate the constitutional rights of lesbian and gay Oregonians, including Plaintiffs, to equal treatment.

77.    As the County Assessor for Multnomah County, Defendant Walruff's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, denying same-sex couples marriage licenses, violate the constitutional rights to equal treatment of Paul and Ben, and Lisa and Chris.

78.    The State's marriage ban, and Defendants' actions to enforce it, denies same-sex couples equal dignity and respect, and deprives their families of a critical safety net of rights and responsibilities. The marriage ban brands lesbians, gay men, and bisexuals, as well as their

24-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

LEGAL29023055.1

children, as second-class citizens through a message of government-imposed stigma and fosters

private bias and discrimination, by instructing all persons with whom same-sex couples interact,

including their own children, that their relationship is less worthy than others.  The State's

marriage ban and Defendants' actions reflect moral disapproval and antipathy toward lesbians,

gay men, and bisexuals.

79.    Same-sex couples such as the Plaintiff-couples are identical to different-sex

couples in all of the characteristics relevant to marriage.

80.    Same-sex couples make the same commitment to one another as different-sex

couples.  Like different-sex couples, same-sex couples fall in love, build their lives together, plan

their futures together, and hope to grow old together.  Like different-sex couples, same-sex

couples support one another emotionally and financially and take care of one another physically

when faced with injury or illness.

81.    Plaintiffs seek to marry for the same emotional, romantic, and dignitary reasons,

and to provide the same legal shelter to their families, as different-sex spouses.

82.    Like some different-sex couples, some same-sex couples are parents raising

children together.

83.    Plaintiffs and their children are equally worthy of the tangible rights and

responsibilities, as well as the respect, dignity, and legitimacy that access to marriage confers on

different-sex couples and their children.  For the many children being raised by same-sex

couples, the tangible resources and societal esteem that access to marriage confers is no less

precious than for children of different-sex couples.

## A.    Discrimination Based on Sexual Orientation

84.    The marriage ban targets lesbian and gay Oregonians as a class for exclusion from

marriage and discriminates against each Plaintiff based on his or her sexual orientation both

facially and as applied.

25-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

85.    The exclusion of Plaintiffs from marriage based on their sexual orientation subjects Defendants' conduct to strict or at least heightened scrutiny, which Defendants' conduct cannot withstand because the exclusion does not even serve any legitimate governmental interests, let alone any important or compelling interests, nor does it serve any such interests in an adequately tailored manner.

86.    Lesbians, gay men, and bisexuals have suffered a long and painful history of discrimination in Oregon and across the United States.

87.    Sexual orientation bears no relation to an individual's ability to perform in or contribute to society.

88.    Sexual orientation is a core, defining trait that is so fundamental to one's identity and conscience that a person may not legitimately be required to abandon it (even if that were possible) as a condition of equal treatment.

89.    Sexual orientation generally is fixed at an early age and highly resistant to change through intervention.  No credible evidence supports the notion that such interventions are either effective or safe; indeed, they often are harmful and damaging.  No mainstream mental health professional organization approves interventions that attempt to change sexual orientation, and virtually all of them have adopted policy statements cautioning professionals and the public about these treatments.

90.    Lesbians, gay men, and bisexuals are a discrete and insular minority, and ongoing prejudice against them continues seriously to curtail the operation of those political processes that might ordinarily be relied upon to protect minorities.  Gay people have fewer civil rights protections at the state and federal level than racial minorities and women had when race- and sex-based classifications were declared to be suspect and quasi-suspect, respectively.

91.    Lesbians, gay men, and bisexuals lack express statutory protection against discrimination in employment, public accommodations, and housing at the federal level and in more than half the states; are systematically underrepresented in federal, state, and local

26-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

democratic bodies; have been stripped of the right to marry through 30 state constitutional amendments and are currently not permitted to marry in a total of 33 states; and have been targeted across the nation through the voter initiative process more than any other group.

**B.    Discrimination Based on Sex**

92.    The marriage ban discriminates against Plaintiffs on the basis of sex, both facially and as applied, barring Plaintiffs from marriage or from being recognized as validly married, solely because each of the Plaintiffs wishes to marry a life partner of the same sex.

93.    Because of these sex-based classifications, Lisa is precluded from marrying her devoted life partner because she is a woman and not a man; were Lisa a man, she could marry Chris.  Similarly, Paul is precluded from marrying Ben because he is a man and not a woman; were Paul a woman, he would be able to marry Ben under Oregon law.

94.    The State's marriage ban also serves the impermissible purpose of enforcing and perpetuating sex stereotypes by excluding same-sex couples from marriage, or from being recognized as validly married, because those couples fail to conform to sex-based stereotypes that men should marry women, and women should marry men.

95.    Given that there are no longer legal distinctions between the duties of husbands and wives, there is no basis for the sex-based eligibility requirements for marriage.

96.    The exclusion of Plaintiffs from marriage based on their sex and the enforcement of gender-based stereotypes cannot survive the heightened scrutiny required for sex-based discrimination.

**C.    Discrimination With Respect to Fundamental Rights and Liberty Interests Secured by the Due Process Clause**

97.    The marriage ban discriminates against lesbian and gay Oregonians based on sexual orientation and sex with respect to the exercise of the fundamental right to marry, and their liberty interests in dignity, autonomy, and family integrity and association.  Differential treatment with respect to Plaintiffs' exercise of fundamental rights and liberty interests, based on

27-  AMENDED COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

their sexual orientation and sex, subjects Defendants' conduct to strict or at least heightened scrutiny, which Defendants' conduct cannot withstand.

## VII.    DECLARATORY AND INJUNCTIVE RELIEF

### 28 U.S.C. §§ 2201 and 2202; Federal Rules of Civil Procedure, Rules 57 and 65

98.    Plaintiffs incorporate by reference and reallege all of the paragraphs of this complaint as though fully set forth herein.

99.    This case presents an actual controversy because Defendants' present and ongoing denial of equal treatment to Plaintiffs subjects them to serious and immediate harms, warranting the issuance of a declaratory judgment.

100.    A favorable decision enjoining Defendants would redress and prevent the irreparable injuries to Plaintiffs identified herein, for which Plaintiffs have no adequate remedy at law or in equity.

101.    Oregon currently allows same-sex couples to access some but not all of the protections of marriage through domestic partnerships, and respects out-of-state marriages of same-sex couples.  The State will incur little to no burden in allowing same-sex couples to marry in Oregon, whereas the hardship for Plaintiffs of being denied equal treatment is severe, subjecting them to an irreparable denial of their constitutional rights.  The balance of hardships thus tips strongly in favor of Plaintiffs.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

A.    Declaring that Article 15, section 5A, of the Oregon Constitution violates Plaintiffs' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; and, further, issuing a permanent injunction that bars enforcement by the State and its subdivisions, including Defendants, of Article 15, section 5A, of the Oregon Constitution;

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

B.      Declaring that ORS 106.010, ORS 106.041(1), and ORS 106.150(1), are unconstitutional insofar as they deny same-sex couples full and equal recognition, rights, privileges, responsibilities, obligations, and immunities of married couples;

C.      Declaring that ORS 40.135(1)(u), ORS 40.255(1)(b), ORS 59.350(1), ORS 93.180(1)(b), ORS 108.020, ORS 108.040(1), ORS 136.655(1), ORS 314.105(2)(a), and all other Oregon statutes referring to "husband and wife," are unconstitutional but only insofar as they deny same-sex couples full and equal recognition, rights, privileges, responsibilities, obligations, and immunities of married couples;

D.      Issuing a permanent injunction that the State and its subdivisions, including Defendants, must in all respects grant to same-sex couples full and equal recognition, rights, privileges, responsibilities, obligations, and immunities of different-sex couples.

E.      Requiring the State and its subdivisions, including Defendants, to issue and register marriage licenses for same-sex couples, pursuant to the same restrictions and limitations applicable to different-sex couples;

F.      Recognizing the marriages of same-sex couples validly married in another jurisdiction;

G.      Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and

H.      Granting such other and further relief as the Court deems just and proper.

//

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

I.      The declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

DATED:  January 22, 2014

**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Kristina J. Holm**, OSB No. 112607
KJHolm@perkinscoie.com
**Misha Isaak**, OSB No. 086430
MIsaak@perkinscoie.com
Perkins Coie LLP
Telephone:  503.727.2000

**Jennifer Middleton**, OSB No. 071510
JMiddleton@jjlslaw.com
Johnson Johnson & Schaller PC
Telephone:  541.683.2506

Cooperating attorneys on behalf of the
ACLU Foundation of Oregon, Inc.

**Kevin Díaz**, OSB No. 970480
KDiaz@aclu-or.org
ACLU Foundation of Oregon, Inc.
Telephone:  503.227.6928

**Rose Saxe**, *pro hac vice*
RSaxe@aclu.org
Telephone: 212.549.2627
**Amanda Goad**, *pro hac vice*
AGoad@aclu.org
Telephone: 213.977.5244
American Civil Liberties Union Foundation

Attorneys for Plaintiffs

30-  AMENDED COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222